UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

EUGENE A., )
 )
       *Plaintiff* )
 )
v. ) No. 1:18-cv-00198-JDL
 )
NANCY A. BERRYHILL, )
*Acting Commissioner of Social Security,* )
 )
       *Defendant* )

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing past relevant work as a cashier and, in the alternative, performing other work existing in significant numbers in the national economy. The plaintiff argues that the ALJ erred in (i) failing to determine the frequency of his epileptic seizures and resulting lost time from work, (ii) making an impermissible lay judgment regarding his ability to interact with the public, (iii) giving weight to the opinions of two medical experts without explaining why she failed to adopt their limitations in standing, walking, lifting, carrying, stooping, and/or reaching, (iv) relying on the opinions of experts who had assessed his mental impairments pursuant to outdated "paragraph B" criteria in determining his mental residual functional capacity ("RFC"), and (v) relying on the plaintiff's ability to perform jobs that the *Dictionary of Occupational Titles* (U.S.

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

Dep't of Labor 4th ed., rev. 1991) ("DOT") indicates do not comport with the mental RFC she assessed. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 15) at 4-19. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through March 31, 2018, Finding 1, Record at 17; that he had the severe impairments of epilepsy, lumbar spine degenerative disc disease, mood disorder, and anxiety disorder, Finding 3, *id.*; that he had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he could occasionally climb stairs, ramps, ladders, ropes, and scaffolds, occasionally balance, stoop, kneel, crouch, and crawl, could not work at unprotected heights or with dangerous moving equipment, could not drive a commercial vehicle, needed to avoid tasks involving a variety of instructions or tasks, but was able to understand to carry out simple one- and two-step instructions and detailed but uninvolved written or oral instructions involving a few concrete variables in or from standardized situations, and could not work in constant contact with the public, Finding 5, *id.* at 21; that he was capable of performing past relevant work as a cashier II, which did not require the performance of work-related activities precluded by his RFC, Finding 6, *id.* at 32; that, in the alternative, considering his age (44 years old, defined as a younger individual, on his alleged disability onset date, July 25, 2013), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, *id.* at 32-33; and that he, therefore, had not been disabled from July 25, 2013, his alleged onset date of disability, through

August 1, 2017, the date of the decision, Finding 7, *id*. at 33-34. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.920(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

In the alternative, the ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Yuckert*, 482 U.S. at 146 n.5; *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Frequency of Seizures

The plaintiff first contends that, in violation of Social Security Ruling 96-8p ("SSR 96-8p"), which requires that an ALJ specify each element of an RFC, the ALJ failed to assess the frequency of his epileptic seizures and the amount of time that he reasonably could be expected to miss work as a result. *See* Statement of Errors at 4-5, 8-9. He asserts that, although the vocational expert ("VE") present at his hearing testified that some employers would not be willing to deal with seizures in the workplace, the VE did not explain the extent to which the condition would limit or preclude the four jobs on which the ALJ relied at Steps 4 and 5 (cashier, flagger, fast-food worker, and laundry folder), undermining her reliance on those jobs. *See id*. at 8-9.

I find no error. As the commissioner observes, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 16) at 2-3, the ALJ adopted the July 2015 physical RFC opinion of agency nonexamining consultant Donald Trumbull, M.D., and gave "great weight with some modification" to the hearing testimony of independent medical expert Alvin Stein, M.D., Record at 29-30, both of whom considered the frequency of the plaintiff's seizures. Dr. Trumbull stated that he "could find no objective evidence in [the] MER [medical evidence of record] to show that seizures have not been controlled since [a] June 2014 medication change[,]" *id*. at 198, and Dr. Stein testified that hospital records documented that the plaintiff had experienced seizures at a rate of less than once a month and that he had at times been noncompliant with his treatment regimen, which would increase the frequency of his seizures, *see id*. at 48-49. While both Drs. Trumbull and Stein assessed certain limitations related to the plaintiff's epilepsy, including a ban against driving and the operation of dangerous machinery, neither assessed a limitation of missed time from work. *See id*. at 57-58, 197-99.

As the commissioner argues, *see* Opposition at 3, the ALJ's reliance on these expert assessments satisfied her obligation pursuant to SSR 96-8p, *see, e.g., Rigby v. Astrue*, No. 1:11-cv-110-JAW, 2012 WL 282988, at *3 (D. Me. Jan. 30, 2012) (rec. dec., *aff'd* Feb. 21, 2012) (an ALJ "satisfies SSR 96-8p when assessment of [an] RFC is based, in part, on [a] state agency examiner's function-by-function analysis") (citation and internal quotation marks omitted).[2]

## B. Public Contact

The plaintiff next seeks remand on the basis that the ALJ's finding that he could not work in constant contact with the public is unsupported by substantial evidence. *See* Statement of Errors at 5-6. I find no harmful error.

The ALJ stated that, although she gave partial weight to the opinions of agency nonexamining consultants David R. Houston, Ph.D., and Leigh Haskell, Ph.D., she did not adopt their finding that the plaintiff could not work with the public, "as the evidence of record d[id] not support this more restrictive limitation." Record at 28 (citation omitted). She gave less weight to an earlier April 2014 mental RFC assessment by Dr. Haskell, which she deemed superseded by her subsequent RFC assessment to the extent inconsistent with the plaintiff's RFC. *See id*. at 29.[3]

As the plaintiff notes, *see* Statement of Errors at 6, the ALJ erred in characterizing the Houston opinion as having imposed a ban on work with the public. To the contrary, Dr. Houston assessed no limitation in the plaintiff's ability to interact with the public. *See* Record at 162-63.

---

[2] The plaintiff's further point that the ALJ substituted her lay judgment for the uncontroverted medical opinion of examining consultant Frank A. Graf, M.D., that the plaintiff would be unable to maintain attention and concentration due to seizures, *see* Statement of Errors at 4-5, is not well-taken. Neither Dr. Trumbull nor Dr. Stein found such a limitation. At oral argument, the plaintiff's counsel contended that this was so because both relied solely on objective medical evidence and ignored, or were prevented by the ALJ from hearing, his client's subjective testimony regarding the frequency and impact of his seizures. However, the ALJ provided a detailed explanation, buttressed by the testimony of Dr. Stein, for her decision to discount all nondocumented reports of seizures, *see* Record at 24-26, 29-30, 58-59, which the plaintiff does not separately challenge, *see* Statement of Errors at 4-5, 8-9.
[3] At that time, Dr. Haskell found that the plaintiff had no limitations in any kind of social interaction. *See* Record at 133-34.

5

The plaintiff argues that, having (mistakenly or not) discounted all expert opinions on the issue of his ability to interact with the public, the ALJ impermissibly assessed this aspect of his mental RFC based on her layperson's assessment of the raw medical evidence. *See* Statement of Errors at 6; *Gordils v. Sec'y of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (Although an ALJ is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he or she "is not qualified to assess [RFC] based on a bare medical record.").

As the commissioner counters, *see* Opposition at 7-8, regardless of the ALJ's error in characterizing the Houston opinion, she made a permissible common-sense judgment that the plaintiff was not completely precluded from working with the public but, instead, could have no constant contact with such individuals. She explained:

> Although [Drs. Houston and Haskell] noted that the [plaintiff] socializes with others on his smart phone, they did not adequately consider the extent of his social activities, relationships, and time spent in the community, including leaving his home up to 7 times a week to take walks and walking frequently as his means of transportation, obtaining custody of his two children and taking care of them, enjoyment of going out to bars and dancing, and beginning a new romantic relationship with his now long-term girlfriend. Moreover, it is inconsistent with the [plaintiff]'s discharge from Crisis and Counseling having met his goals, including being able to be in public without being overwhelmed with anxiety and successfully implementing skills to reduce his anxiety, and the [plaintiff]'s essential resolution of anxiety after a few sessions of therapy. Finally, I note that no treating provider has indicated or suggested a more restrictive mental RFC.

Record at 28-29 (citations omitted). Even setting aside Dr. Houston's actual finding that the plaintiff had no limitation in his ability to interact with the public, this narrative, the content of which the plaintiff does not separately challenge, *see* Statement of Errors at 5-6, 9, constitutes substantial evidence in support of the common-sense judgment that he retained the capacity to interact on a less than constant basis with the public, *see, e.g., Bent v. Colvin*, No. 1:13-cv-243-JDL, 2014 WL 4060308, at *4 (D. Me. Aug. 15, 2014) (ALJ "made a reasonable, commonsense judgment that the [claimant]'s actual accomplishments and perseverance during the relevant period

6

were inconsistent with [expert's] opinion that she had severe limitations in her ability to concentrate and complete tasks, which was based on a one-time examination").

### C. Standing and/or Walking, Lifting, Carrying, Stooping, Reaching

The plaintiff next faults the ALJ for giving great weight to the testimony of Dr. Stein but failing either to adopt or acknowledge his finding that the plaintiff could stand and/or walk for only four to six hours per day, and some weight to the opinion of Department of Veterans Affairs examining consultant Eric M. Elliot, PA-C, which she praised as based on a "thorough examination[,]" but failing to adopt or acknowledge his findings that the plaintiff's back problems would interfere with his ability to perform occupations requiring, *inter alia*, "prolonged weight-bearing, . . . lifting, carrying, . . . stooping, [or] reaching" and that he had "no restriction from sedentary employment." Statement of Errors at 6-7 (quoting Record at 29, 1005).

As the commissioner observes, *see* Opposition at 5, the ALJ not only gave great weight to the Trumbull opinion but also expressly "adopted" it as her RFC, Record at 29. Thus, to the extent that the opinions of Dr. Stein and PA-C Elliot diverge from that of Dr. Trumbull, it is reasonably apparent that the ALJ did not adopt them, rendering any error harmless. *See, e.g., Parker v. Colvin*, No. 1:15-cv-00446-JHR, 2016 WL 4994997, at *6 (D. Me. Sept. 19, 2016) (ALJ's error in "purport[ing] to give substantial weight to two conflicting opinions" harmless when "one c[ould] reasonably infer" that ALJ adopted opinion more consistent with her findings). The ALJ's failure to discuss the portions of the Stein and Elliot opinions highlighted by the plaintiff, hence, does not warrant remand.

### D. Reliance on Consultants Who Applied Superseded "Paragraph B" Criteria

The plaintiff next contends that the ALJ erred in relying on the mental RFC assessments of Drs. Houston and Haskell, which were rendered "unreliable" when the "Paragraph B" criteria on which they were predicated were revised effective January 17, 2017, prior to the issuance of

7

the ALJ's decision. Statement of Errors at 11-16; Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66138 (Sept. 26, 2016) (effective date of January 17, 2017).

As the commissioner rejoins, *see* Opposition at 10-11, this argument conflates distinct steps in the commissioner's psychiatric review technique. The "Paragraph B" criteria pertain to the evaluation at Step 2 of the severity of a claimant's medically determinable mental impairments. *See* 20 C.F.R. §§ 404.1520a(c)-(d), 416.920a(c)-(d); *Hayes v. Astrue*, No. 2:10-cv-42-DBH, 2010 WL 5348757, at *3 (D. Me. Dec. 20, 2010) (rec. dec., *aff'd* Jan. 18, 2011). If a mental impairment is deemed severe at Step 2 but does not meet or equal a so-called "Listing" at Step 3, the commissioner must assess a claimant's RFC for purposes of determining, at Steps 4 and 5, whether the claimant can perform past relevant work or other work existing in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3), 404.1545(a)(5), 416.965(a)(5).

Although, as the plaintiff notes, *see* Statement of Errors at 14, SSR 96-8p provides that the determination of mental RFC "requires a more detailed assessment [than at Steps 2 and 3] by itemizing various functions contained in the broad categories found in paragraphs B and C[,]" the ruling also cautions that "[t]he adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process[,]" SSR 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2018), at 146.

While the commissioner amended the "paragraph B" criteria effective January 17, 2017, she did not revise her definition of a claimant's RFC. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) ("We will assess your [RFC] based on all of the relevant medical and other evidence[,]" including "statements about what you can still do that have been provided by medical

sources"). Beyond this, the plaintiff fails to identify specific limitations omitted from her mental RFC. *See* Statement of Errors at 11-16. The plaintiff, hence, falls short of demonstrating that the ALJ erred in relying on the Houston and Haskell RFC assessments or that, if she did err, any error was harmful.

### E. Reliance on Jobs at Odds with DOT

The plaintiff, finally, argues that the ALJ erred in relying on the VE's testimony that a hypothetical individual with his assessed RFC could perform certain jobs when the DOT indicates otherwise. *See* Statement of Errors at 16-19. He asserts that the ALJ's mental RFC finding was internally inconsistent insofar as she found that he "must avoid tasks *involving a variety of instructions or tasks*" and, yet, deemed him capable of carrying out instructions "involving a few concrete variables." *Id*. at 18 (quoting Finding 5, Record at 19) (emphasis added by plaintiff). He contends that, given the asserted inconsistency, the more restrictive element controlled, limiting him to the performance of jobs with a General Educational Development ("GED") reasoning level of 1. *See id*. He argues that, because all of the jobs that the ALJ deemed him capable of performing have higher GED reasoning levels of 2 or 3, remand is required. *See id*. at 18-19.

As the commissioner rejoins, *see* Opposition at 15-16, the plaintiff, who was represented by counsel at hearing, waived these arguments by failing to raise them at that time, *see, e.g., Kristina D. B. v. Berryhill*, No. 1:18-cv-00088-JHR, 2019 WL 1407407, at *6 (D. Me. Mar. 28, 2019) (although Social Security Ruling 00-4p ("SSR 00-4p") "imposes an affirmative obligation on ALJs to (i) inquire whether there is any conflict between VE testimony and the DOT, (ii) elicit a reasonable explanation for any apparent conflict, and (iii) resolve said conflict, regardless of how it was identified[,]" "because SSR 00-4p pertains only to apparent conflicts, a claimant waives a claim of failure to identify and resolve a conflict between VE testimony and the DOT unless he or

9

she can show that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance") (citations, internal punctuation, and emphasis omitted).

At hearing, the VE affirmed that his testimony was consistent with the DOT, and the plaintiff's counsel raised no issue as to the now-asserted inconsistency. *See* Record at 113-14, 117-20. The plaintiff does not argue that the asserted discrepancy between the VE's testimony and the DOT should have been apparent to the ALJ. *See* Statement of Errors at 16-19. Accordingly, he fails to demonstrate his entitlement to remand on the basis of his final point of error.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 5th day of June, 2019.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge